**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ZACHARY BICKENHEUSER<br>1111 Biers Run Road<br>Chillicothe, Ohio 45601, | ) ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| HOMETOWN MOTORS, INC.<br>524 Eastern Avenue<br>Chillicothe, Ohio 45601 | ) ) ) ) | **JURY DEMAND ENDORSED<br>HEREIN** |
| Serve Also:<br>Hometown Motors, Inc.<br>c/o Matthew B. Litter<br>541 Eastern Avenue<br>Chillicothe, Ohio 45601 | ) ) ) ) ) ) ) | |
| -and- | ) ) | |
| SCOTT DYKE<br>524 Eastern Avenue<br>Chillicothe, Ohio 45601, | ) ) ) ) | |
| Defendants. | ) | |

Plaintiff, Zachary Bickenheuser, by and through undersigned counsel, as his Complaint against Defendant Hometown Motors, Inc. ("Hometown") and Scott Dyke, states and avers the following:

**PARTIES AND VENUE**

1. Bickenheuser is a resident of the city of Chillicothe, Ross County, Ohio.

2. At all times herein, Bickenheuser was acting in the course and scope of his employment.

3. Hometown is a domestic corporation that does business at 541 Eastern Avenue, Chillicothe, Ross County, Ohio 45601.

4. Hometown is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. Dyke is a resident of the state of Ohio.

6. At all times herein, Dyke was acting in the course and scope of his employment.

7. Dyke is and, at all times hereinafter mentioned, was an individual who was a manager and/or supervisor at Hometown and who acted directly or indirectly in the interest of Hometown in relation to its employees, and is an employer within the meaning of 29 U.S.C § 2601 *et seq.*

8. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Bickenheuser is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Family & Medical Leave Act ("FMLA"), 29 U.S.C § 2601 *et seq.*

9. All material events alleged in this Complaint occurred in Ross County, Ohio.

10. This Court has supplemental jurisdiction over Bickenheuser's state law claims pursuant to 28 U.S.C. § 1367 as Bickenheuser's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12. Within 300 days of the conduct alleged below, Bickenheuser filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2021-00919 against Hometown ("Bickenheuser EEOC Charge").

13. Bickenheuser dually filed the Bickenheuser EEOC Charge in the EEOC and the Ohio Civil Rights Commission.

2

14. On or about November 3, 2021, the EEOC issued a Notice of Right to Sue letter to Bickenheuser regarding the Charges of Discrimination brought by Bickenheuser against Hometown in the Bickenheuser EEOC Charge.

15. Bickenheuser received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

16. Bickenheuser has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

17. Bickenheuser has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

### FACTS

18. In or about August 2019, Bickenheuser began working for Hometown.

19. Initially, Hometown employed Bickenheuser as a floater.

20. Most recently, Hometown employed Bickenheuser as a service technician.

21. Hometown was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

22. At all times relevant herein, Bickenheuser was employed by Hometown for at least 12 months and had at least 1,250 hours of service with Hometown and therefore was an "eligible employee" under FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

23. Bickenheuser has atrial fibrillation.

24. Atrial fibrillation is a chronic condition in which a person has an abnormal heart rhythm.

25. Symptoms of atrial fibrillation include chest pain, fainting, lightheadedness, shortness of breath, and heart palpitations.

26. Atrial fibrillation is associated with increased risk for heart failure and strokes.

27. Bickenheuser's atrial fibrillation is a physical impairment.

28. Bickenheuser's atrial fibrillation significantly limits him in one or more major life activities, including working.

29. Bickenheuser has a record of physical impairment.

30. Because of Bickenheuser's atrial fibrillation, Hometown perceived Bickenheuser as disabled.

31. Bickenheuser is disabled within the meaning of ADA.

32. Bickenheuser's atrial fibrillation is a serious medical condition within the meaning of FMLA.

33. In or about October 2020, the symptoms of Bickenheuser's atrial fibrillation grew worse.

34. In or about October 2020, Bickenheuser told Dyke about his symptoms.

35. On or about November 10, 2020, Bickenheuser asked Dyke to allow him to go on leave due to his medical condition ("Leave Request").

36. On or about November 10, 2020, Bickenheuser qualified for FMLA leave.

37. Dyke denied the Leave Request.

38. Hometown's denial of the Leave Request was an adverse employment action.

39. In response to the Leave Request, Dyke told Bickenheuser that he would hire someone to replace Bickenheuser if Bickenheuser took leave.

40. On or about November 10, 2020, Bickenheuser asked Dyke to allow him to work light duty due to his medical condition ("Accommodation Request").

41. On or about November 10, 2020, Bickenheuser provided Dyke with a doctor's note recommending that he work light duty.

4

42. Specifically, Bickenheuser's doctor recommended that he not engage in strenuous activities such as heavy lifting.

43. Dyke denied the Accommodation Request.

44. Bickenheuser objected to the denial of the Accommodation Request.

45. Bickenheuser opposed disability discrimination.

46. On or about November 13, 2020, Bickenheuser had an appointment for his doctor to perform a stress test during his lunch break.

47. On or about November 13, 2020, Bickenheuser told Dyke and Zeb Kennedy that he had an appointment for his doctor to perform a stress test during his lunch break ("Notice of Doctor's Appointment").

48. Kennedy was lead service technician for Hometown.

49. In response to the Notice of Doctor's Appointment, Dyke told Bickenheuser that Bickenheuser was prohibited from talking about his medical conditions at work.

50. On or about November 14, 2020, Bickenheuser was experiencing rapid heart fluttering at work ("November 14 Symptoms").

51. Because of the November 14 Symptoms, Bickenheuser went to the hospital.

52. On or about November 17, 2020, Bickenheuser went to the hospital because he was having trouble breathing.

53. On or about November 17, 2020, Bickenheuser's doctor diagnosed him with pneumonia.

54. On or about November 17, 2020, Bickenheuser provided Kennedy with a doctor's note explaining that he had pneumonia ("November 17 Note").

55. In the November 17 Note, Bickenheuser's doctor explained that Bickenheuser's pneumonia was not contagious and that Bickenheuser could return to work with light duty.

5

56. Despite the November 17 Note, Kennedy instructed Bickenheuser to take 4 days off work.

57. On or about November 17, 2020, Bickenheuser was eligible for FMLA leave.

58. Kennedy did not inform Bickenheuser of his rights under FMLA.

59. Dyke did not inform Bickenheuser of his rights under FMLA.

60. On or about November 18, 2020, Hometown terminated Bickenheuser's employment ("Termination").

61. The Termination was an adverse employment action.

62. The Termination was an adverse action.

63. On or about November 18, 2020, Kennedy told Bickenheuser about the Termination via Facebook Messenger.

64. On or about November 18, 2020, Kennedy did not state a reason for the Termination.

65. Dyke made the decision to give Bickenheuser the Termination.

66. Hometown has a progressive disciplinary policy ("Discipline Policy").

67. A verbal warning is the lowest level of discipline in the Discipline Policy.

68. Bickenheuser did not receive a verbal warning before the Termination.

69. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

70. Bickenheuser did not receive a written warning before the Termination.

71. A termination is the highest level of discipline in the Discipline Policy.

72. Hometown knowingly skipped progressive disciplinary steps in terminating Bickenheuser.

73. Hometown knowingly terminated Bickenheuser's employment.

74. Hometown knowingly took an adverse employment action against Bickenheuser.

75. Hometown knowingly took an adverse action against Bickenheuser.

76. Hometown intentionally skipped progressive disciplinary steps in terminating Bickenheuser.

77. Hometown intentionally terminated Bickenheuser's employment.

78. Hometown intentionally took an adverse employment action against Bickenheuser.

79. Hometown intentionally took an adverse action against Bickenheuser.

80. Hometown knew that skipping progressive disciplinary steps in terminating Bickenheuser would cause Bickenheuser harm, including economic harm.

81. Hometown knew that terminating Bickenheuser would cause Bickenheuser harm, including economic harm.

82. Hometown willfully skipped progressive disciplinary steps in terminating Bickenheuser.

83. Hometown willfully terminated Bickenheuser's employment.

84. Hometown willfully took an adverse employment action against Bickenheuser.

85. Hometown willfully took an adverse action against Bickenheuser.

86. On or about November 18, 2020, Defendants terminated Bickenheuser's employment because of his disability.

87. On or about November 18, 2020, Defendants terminated Bickenheuser's employment because of his perceived disability.

88. On or about November 18, 2020, Defendants terminated Bickenheuser's employment because of his opposition to discrimination.

89. On or about November 18, 2020, Defendants terminated Bickenheuser's employment because he requested a disability accommodation.

90. On or about November 18, 2020, Defendants terminated Bickenheuser's employment in order to prevent him from using qualified FMLA leave.

91. As a direct and proximate result of Defendants' conduct, Bickenheuser suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA

#### (Defendant Hometown)

92. Bickenheuser restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

93. Defendants treated Bickenheuser differently than other similarly-situated employees based on his disabling condition.

94. Defendants treated Bickenheuser differently than other similarly-situated employees based on his perceived disabling condition.

95. On or about November 18, 2021, Defendants terminated Bickenheuser's employment without just cause.

96. Defendants terminated Bickenheuser's employment based on his disability.

97. Defendants terminated Bickenheuser's employment based on his perceived disability.

98. Defendants violated ADA when they discharged Bickenheuser based on his disability.

99. Defendants violated ADA when they discharged Bickenheuser based on his perceived disability.

100. Defendants violated ADA by discriminating against Bickenheuser based on his disabling condition.

101. Hometown violated ADA by discriminating against Bickenheuser based on his perceived disabling condition.

102. Bickenheuser informed Defendants of his disabling condition.

8

103. Bickenheuser requested accommodations from Defendants to assist with his disabilities, including light duty.

104. Bickenheuser's requested accommodations were reasonable.

105. There was an accommodation available that would have been effective and would have not posed an undue hardship to Hometown.

106. Defendants failed to engage in the interactive process of determining whether Bickenheuser needed an accommodation.

107. Defendants failed to provide an accommodation.

108. Defendants violated ADA by failing to provide Bickenheuser a reasonable accommodation.

109. As a direct and proximate result of Defendants' conduct, Bickenheuser suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

### (Defendant Hometown)

110. Bickenheuser restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

111. Defendants treated Bickenheuser differently than other similarly-situated employees based on his disabling condition.

112. Defendants treated Bickenheuser differently than other similarly-situated employees based on his perceived disabling condition.

113. On or about November 18, 2021, Defendants terminated Bickenheuser's employment without just cause.

114. Defendants terminated Bickenheuser's employment based on his disability.

9

115. Defendants terminated Bickenheuser's employment based on his perceived disability.

116. Defendants violated R.C. § 4112.02 when they discharged Bickenheuser based on his disability.

117. Defendants violated R.C. § 4112.02 when they discharged Bickenheuser based on his perceived disability.

118. Defendants violated R.C. § 4112.02 by discriminating against Bickenheuser based on his disabling condition.

119. Hometown violated R.C. § 4112.02 by discriminating against Bickenheuser based on his perceived disabling condition.

120. Bickenheuser informed Defendants of his disabling condition.

121. Bickenheuser requested accommodations from Defendants to assist with his disabilities, including light duty.

122. Bickenheuser's requested accommodations were reasonable.

123. There was an accommodation available that would have been effective and would have not posed an undue hardship to Hometown.

124. Defendants failed to engage in the interactive process of determining whether Bickenheuser needed an accommodation.

125. Defendants failed to provide an accommodation.

126. Defendants violated R.C. § 4112.02 by failing to provide Bickenheuser a reasonable accommodation.

127. As a direct and proximate result of Defendants' conduct, Bickenheuser suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III:  RETALIATION IN VIOLATION OF ADA

### (Defendant Hometown)

128. Bickenheuser restates each and every prior paragraph of this complaint, as if it were fully restated herein.

129. Bickenheuser requested a disability accommodation.

130. As a result of Defendants' discriminatory conduct described above, Bickenheuser complained about the failure to accommodate his disability.

131. Subsequent to Bickenheuser's objection to the failure to accommodate his disability, Dyke told him that he was prohibited from discussing medical issues at work.

132. Subsequent to Bickenheuser's objection to the failure to accommodate his disability, Defendants terminated his employment.

133. Defendants' actions were retaliatory in nature based on Bickenheuser's opposition to the unlawful discriminatory conduct.

134. Pursuant to ADA, it is an unlawful discriminatory practice to retaliate against an employee for opposing discrimination.

135. Pursuant to ADA, it is an unlawful discriminatory practice to retaliate against an employee for requesting a disability accommodation.

136. As a direct and proximate result of Defendants' conduct, Bickenheuser suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

### (All Defendants)

137. Bickenheuser restates each and every prior paragraph of this complaint, as if it were fully restated herein.

138. Bickenheuser requested a disability accommodation.

139. As a result of Defendants' discriminatory conduct described above, Bickenheuser complained about the failure to accommodate his disability.

140. Subsequent to Bickenheuser's objection to the failure to accommodate his disability, Dyke told him that he was prohibited from discussing medical issues at work.

141. Subsequent to Bickenheuser's objection to the failure to accommodate his disability, Defendants terminated his employment.

142. Defendants' actions were retaliatory in nature based on Bickenheuser's opposition to the unlawful discriminatory conduct.

143. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

144. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice to retaliate against an employee for requesting a disability accommodation.

145. As a direct and proximate result of Defendants' conduct, Bickenheuser suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT V: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

### (All Defendants)

146. Bickenheuser restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

147. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

148. Hometown is a covered employer under FMLA.

149. During his employment, Bickenheuser qualified for FMLA leave.

150. During his employment, Bickenheuser attempted to request FMLA leave.

151. Defendants failed to advise Bickenheuser properly of his rights under FMLA.

152. Defendants unlawfully interfered with Bickenheuser's exercise of his rights under FMLA in violation of Section 105 of FMLA and section 825.220 of FMLA regulations.

153. Defendants' act of writing Bickenheuser up during his FMLA leave violated and interfered with Bickenheuser's FMLA rights.

154. As a direct and proximate result of Defendants' conduct, Bickenheuser is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

13

## COUNT VI: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION

### (Defendant Dyke)

155. Bickenheuser restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

157. Defendants aided, abetted, incited, coerced, and/or compelled Hometown's discriminatory termination of Bickenheuser.

158. Defendants aided, abetted, incited, coerced, and/or compelled Hometown's discriminatory suspension of Bickenheuser's employment.

159. Defendants aided, abetted, incited, coerced, and/or compelled Hometown's discriminatory treatment of Bickenheuser.

160. Defendants violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

161. As a direct and proximate result of Defendants' conduct, Bickenheuser has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff Bickenheuser respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    (i)    Requiring Hometown to abolish discrimination, harassment, and retaliation;

(ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii)   Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v)     Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) Issue an order requiring Hometown to restore Bickenheuser to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(c) An award against each Defendant of compensatory and monetary damages to compensate Bickenheuser for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(e) An award of reasonable attorneys' fees and non-taxable costs for Bickenheuser claims as allowable under law;

(f) An award of the taxable costs of this action; and

(g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff Zachary Bickenheuser*

## JURY DEMAND

Plaintiff Bickenheuser demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)

16